## Wilson's Appeal..

1. The interest on Municipal Bonds and the Bonds of Private Corporations, is apportionable.

   Earp's Will, 1 Parsons Eq. Cas., 453 overruled.

2. Whether the interest on Government Bonds is apportionable or not, not decided.

January 15th, 1885.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.    CLARK, J., absent.

APPEAL from the Orphans' Court of *Philadelphia County*: Of January Term, 1884, No. 303.

Appeal of Ellwood Wilson, Jr., and Emily V. Wilson, his wife in right of said wife, from a decree of said court sustaining exceptions filed on behalf of the executrix of Lewis A. Truefitt deceased, to. the adjudication of the account of the Phila. Trust Safe Deposit & Insurance Co. substituted trustees, under the will of Frances V. Truefitt.

Frances V. Truefitt died, testate, leaving a husband, Lewis A. Truefitt, and an adopted daughter, Emily V. Truefitt, subsequently intermarried with Ellwood Wilson, Jr.    By her will, the testatrix bequeathed the residue of her estate to trustees, in trust to pay one half the net income to her husband for life, and to apply the remaining half, and after the death of her husband, the whole of said income, to the maintenance and education of her adopted daughter, until the arrival of the latter at the age of twenty-one years, and thereafter to pay over the said income to said adopted daughter for life—with remainder to her children.

Lewis A. Truefitt died December 27th, 1882, and the question which arose at the audit was whether the semi annual interest which was due April 1st, 1883, on certain bonds of the city of Pittsburgh, and certain other bonds of the Reading Coal & Iron Company, and which were part of the residuary estate, should be paid in full to Emily V. Wilson, or divided between her and the executrix of Lewis A. Truefitt.

The auditing Judge held that this interest on said bonds was not apportionable and awarded it all to Mrs. Wilson; but upon exceptions filed to this adjudication the court in banc decided that said interest was apportionable, and entered a decree dividing it between Mrs. Wilson and the executrix of Mr. Truefitt; whereupon Elwood Wilson, Jr., and Emily V. his wife, in the right of the latter, took this appeal assigning for error the decree of the court.

[Wilson's Appeal.]

*A. Sydney Biddle*, (with whom was *Ward*), for appellant.— It has been the rule from early times that the income derived from public funds is not apportionable : Pearly *v.* Smith, 3 Atkyns, 260, which was the case of the South Sea Annuities, and Sherrard *v.* Sherrard, 3 Atkyns, 502, which was the case of the Government Securities. Judge KING, in Earp's Will, 1 Parsons, 453, held that there was no difference in respect to this rule between the obligations of states and those of municipal and private corporations.

But the court below has departed from Judge KING's ruling in holding that the bonds of municipal and private corporations are to be treated exactly as the bonds of individuals, and that the interest upon them is therefore to be apportioned. The ground of this decision is that as a state or a nation cannot be sued, and nothing can ever be collected except what is voluntarily paid, therefore, the interest on their obligations is an entire sum and does not exist until it is paid, whereas municipal and private corporations can be compelled to perform their contracts by due process of law, and therefore, the interest on their obligations is apportionable exactly in the same way as if they were individuals.

It is submitted that an examination of this distinction will show that it is not a satisfactory one. In the first place, it can make no difference with respect to apportionment that a soverign cannot be sued, because the question of distribution can never arise until he has actually paid, at which time the doubt as to whether the payment will be made does not exist. In the second place, the sovereign has no interest in the matter whatever. When he pays the amount he has undertaken to pay on quarter day, it is a matter of indifference to him as to how it is distributed. Finally, the interest on the bonds of individuals is apportionable although the principal is not yet due and the debtor cannot be compelled to pay, which would not be the case if the test depended in any respect upon whether the debtor could be sued : Banner *v.* Lowe, 13 Vesey, Jr., 135.

And after the interest on public funds has been paid, it can be regarded as compensation for the use of money *de die in diem* exactly as in case of money lent to individuals and as readily and perfectly apportionable.

Therefore the distinction between government loans and those of individuals cannot be referred to the fact that one debtor cannot be sued whereas the other can. And if the test fails there, it should not be relied on to make a difference between government loans and those of corporations.

*Byerly Hart*, for appellee.—In contracts of individuals

under seal, such as bonds and mortgages the interest is apportionable : Clapp *v.* Astor, 2 Edwards Chan., 379. It has been decided that the interest on public funds is not apportionable. But it is submitted that those only are public funds which are issued by the sovereign power which in this county would include United States bonds and the bonds of the several Commonwealths.

But, again, the rule as to public funds is derived from England and there it was applied because the payments are like annuities and dividends. In the cases in which the question has arisen, the periodical payments on the public debt are spoken of as " dividends," and it well known that the largest portion of the English debt is in the form of annuities with no fixed period of payment, being mostly interminable, and which can be extinguished only by purchase, and the English debt is called " stock," not bonds : Chambers' Encyclopædia, art. " Debt-National."

As to private corporation bonds and mortgages it is impossible to understand why there should be any difference between them and the bonds and mortgages of individuals : Ebbs Estate, 36 L. I. 65; S. C. 13 Phila., 44. In England even before the Statute of 33 & 34 Vict. Ch. 35, making all periodical payments apportionable, interest on bonds of private corporations was apportioned : Rogers Trust, 1 Drewry & Smale, 338.

Mr. Justice PAXSON delivered the opinion of the court, February 23d, 1885.

The single question presented by this record is, whether the interest upon municipal and other corporation bonds can be apportioned. The Auditing Judge, following a decision of the late Judge KING, in Earp's Will, 1 Parson's Select Equity Cases., 453 ; held that they could not be apportioned. Upon exceptions filed the Orphans' Court reversed the decree of the Auditing Judge and apportioned the income. The bonds about which the contention arose, were bonds of the City of Pittsburg, and the mortgage bonds of the Philadelphia & Reading Coal & Iron Company.

The rule at common law was that the interest on money loans was apportionable, and in this respect it differed from other periodical payments like dividends, rent, pensions and annuities. The reason for the distinction is that in the case of money at interest, the interest accrues *de die in diem*, which cannot be said of some at least of the other payments mentioned.

That this rule is inequitable, and to some extent arbitrary, may be assumed from the fact that modern legislation and

judical decision have steadily tended to narrow the rule and enlarge the exceptions. Thus, Courts of Equity have extended the doctrine of apportionments to cases of settlements or annuities for maintenance, upon the ground of the presumed intention of the settlor or donor to provide for the support of the beneficiary down to the determination of the gift by death, marriage, or arrival at majority as the case may be : Gheen *v.* Osborn, 17 S. & R., 171; Blight *v.* Blight, 1 P. F. S., 420.

In this state the rigor of the common law has been relaxed in favor of the tenant for life so far as regards rents, by the Act of February 24th, 1834, and in England, by statute 34 and 35 Victoria, it is declared that "All rents, annuities, dividends, and other periodical payments in the nature of income, shall, like interest on money lent, be considered as accruing from day to day, and shall be apportionable in respect of time accordingly."

The Orphans' Court, while not a Court of Equity, administers the law upon equitable principles, and is not bound to enforce a common law rule admittedly obnoxious to equity further than it is constrained by authority, and the reason upon which the rule itself rests.

There seems to be a reason why dividends declared by stock companies should not be apportioned. Such dividends are not interest accruing from day to day, but profits upon business operations which in a strict sense cannot be said to accrue at all, but are declared at the pleasure of a board of managers, with nothing to show during what portion of the year they were earned. So, too, of annuities. In such cases, there is no earning of interest upon anything; they are fixed sums payable at stated days, and until those days arrive, there is nothing earned and there is nothing due.

The principle has long been settled in England that income derived from the public funds is not apportionable. It was so ruled in Pearly *v.* Smith, 3 Atkyns, 260, in the case of The South Sea annuities : and in Sherrard *v.* Sherrard, Id., 502. These cases were followed by many others affirming the same doctrine. It is needless to cite them as there is no dispute about the English rule. In Earp's Will, Judge KING adopts the English rule and applies it to municipal and corporation bonds. We do not know to what extent Judge KING's decision has been followed by other Orphans' Court and Common Pleas judges throughout the state, but as presented here it is a new question. We have no decisions of our own, therefore, to embarrass us. The decision of so eminent a jurist as Judge KING is entitled to much respect, but it is not authority beyond its reason.

We have not the case of United States and state loans before

us, and no question in regard to them will be decided, and they will be considered only so far as they are necessarily involved in the discussion of municipal and other corporation bonds. I am unable to see any distinction between them upon principle; if any is made it must be an arbitrary one, and because some rule of policy requires it.

It is manifest from a careful study of Judge KING's opinion that he did not consider, and probably entirely overlooked the peculiar character of the English consols, and their marked difference from the public debt of this country. In many of the English cases the question arose upon annuities, such as the South Sea annuities. The English consols are but annuities; the interest only is paid, the principal is never reimbursable, and the government can only redeem them by buying them in the market.

The reasoning of the English cases goes upon the ground that the interest does not accrue day by day, which is entirely true of their consols. In Pearly *v.* Smith, supra, Lord HARDWICKE stated it as tersely as it can be put, when he says: "If the security had continued a mortgage, the claimant would have been entitled to the demand he now makes, because there interest accrued every day for forbearance of the principal, though notwithstanding it is usual in mortgages to make it payable yearly." The same distinction between mortgages and funded debt is recognized in Sherrard *v.* Sherrard, supra, and many other English cases. And it is an obvious distinction as applied to South Sea annuities, and British consols generally. But the distinction between a mortgage, and bonds of the City of Pittsburg, and the bonds of The Philadelphia & Reading Coal & Iron Company secured by a mortgage, is difficult to see. In either case it is a loan, and the interest accrues from day to day as the consideration of the forbearance. That the principal is not due is not to the point, for money is loaned for a term of years upon mortgages as well as city or corporation bonds.

No reason other than the one just stated has or can be given why the income from municipal bonds may not be apportioned. The learned court below, however, attempted to take municipal bonds out of the English rule in regard to government securities, by showing that municipal and other corporations may be compelled to pay, which is not the case with either the National or State government. The conclusion is correct but we do not assent to the reasoning. It is true the government is sovereign; it cannot be sued and compelled to pay like an ordinary debtor, while municipalities which are the creatures of the state may be so compelled. This however is outside of the question. If the sovereign

does not pay there is nothing to apportion. No question of apportionment can be raised until there is actual payment of the interest, and when payment is made the question whether it was a voluntary or a forced payment has no bearing upon the principle of apportionment.

Nor is there any question about government policy or treasury convenience. This was clearly shown by Judge KING in Earp's Will, supra, where he said : "It is a mistake to suppose that the rule in equity had any original connection with government policy or treasury convenience. From the time of its establishment by Lord HARDWICKE, in 1744, such an idea is not intimated in any decided case. And this for the simple reason that the treasury had no interest in the subject." Judge KING then proceeds to give what he conceived to be the reason of the rule in equity. It was substantially that the funded debt carries with it the idea of permanency, and becomes a favorite investment with persons desirous of having a fixed income ; that the interest of such investments may be applicable to a series of persons for a long time. These may be very good reasons to induce persons who desire permanent investments to buy such securities, and perhaps why the income of English consols and South Sea annuities should not be apportioned, as the interest thereon does not accrue from day to day. But the interest on these municipal and corporation bonds does accrue *de die in diem* precisely as in the case of an ordinary bond and mortgage, and we are wholly unable to distinguish one from the other in principle. The applicability of this rule to federal and state securities will be decided when the cases arise ; they have been referred to here only for the purpose of illustration, and in so far as such allusion was necessary to a proper discussion and understanding of the case before us.

> The decree is affirmed and the appeal dismissed at the costs of the appellant.