ANN B. FORMAN

*vs.*

PETER J. FORD, THOMAS FORD, and THOMAS F. RYAN.

New Castle, at Chambers, Dec. 15, 1886.

*Pollution of natural stream; injunction.*

A preliminary injunction—restraining the use, when completed, of a building in course of erection, as a morocco factory, so as to pollute and render unfit for domestic and agricultural purposes the waters of a natural stream, to the use of which in its natural condition, the owner of land through which it passed was entitled—*made perpetual by consent.*

BILL FOR AN INJUNCTION.—The facts are stated in the opinion.

*Victor Dupont, Edward G. Bradford,* and *Willard Saulsbury, Jr.,* appeared for the complainant.

*William C. Spruance* and *George Gray,* for the defendants.

THE CHANCELLOR.—The complainant is the owner of a farm or tract of land situate in Christiana Hundred, containing about one hundred and ten acres, through which a natural stream of water, known as Silver Brook, flowed until it emptied into another stream in said Hundred, known and commonly called Mill Creek; which creek finally discharges its waters into the Christiana River, in said county.

The present and prior owners and tenants of said farm have from time immemorial used and enjoyed the waters of said stream called "Silver Brook" in their natural, pure, and unadulterated condition, for watering live-stock and for general farming, agricultural, and domestic

purposes; and for these purposes the waters of said stream seem to have been sufficient.

The bill alleges that the complainant is dependent on said stream for water for the purposes aforesaid, and that no other convenient or practicable means existed there-for on said farm.

It avers that the waters of said stream, run, or brook, from its entry on said farm to its junction with Mill Creek, are and ever have been of sufficient quantity and purity for the use of livestock, farming, agricultural, and domestic purposes on said farm of the complainant and on the several farms or tracts of land through or along which said stream run, or brook flows, until its junction with said Mill Creek; that it is of great importance to the complainant and others using the waters of said stream for like purposes; that the waters thereof should remain in a pure and unpolluted condition; that said stream or run in its ancient course flows for a short distance through and over certain lands recently included, by legislative enactment, within the limits of the city of Wilmington, and forming the extreme western, or south-western, portion of the territory of said city.

The defendants, the bill states, are engaged in erecting a building to be used and peculiarly adapted for a morocco factory, on the banks, or in immediate proximity to, the said stream or run, and have built into the foundation walls of said building six iron pipes of considerable dimensions, which project over the ancient bed of said stream, and through which impure and foul water, used in connection with the manufacture of morocco, and containing decayed animal matter and certain mineral poisons, and the general refuse of a morocco factory, consisting of divers other foul, noxious, offensive, and polluting substances, will be discharged in large quantities from day to day into the said stream, or run, if the

said building shall be completed and used for the purpose for which it is intended, and being constructed, namely, the manufacturing of morocco.

The bill charges that the discharge from the proposed morocco factory of such impure water and refuse, and poisonous substances, will pollute the waters of said stream, and render them unfit for their accustomed uses aforesaid, and render the tract of land and farm less valuable, and will be of irreparable injury to the complainant.

It appears that the complainant, together with other owners of land on said stream, caused written notice to be served on the defendants, warning them to abstain from the pollution of the waters of said stream; and that they should insist, by all legal and equitable means, upon their rights to the use of the same, in their accustomed pure and unpolluted condition. Notwithstanding said notice, the defendants continued the erection of their said factory and building.

Upon the above statement of facts, the chancellor granted a preliminary injunction restraining the defendants, until further order of the court, from using or permitting to be used the said building, when erected, as a morocco factory, from which would be discharged into said stream, or run, any impure or foul water used in connection with the manufacture of morocco, or containing decayed animal matter, blood, lime, tanic acid, mineral poison, excrement of animals, or any noxious or offensive refuse mentioned in said bill.

The answer filed by the defendants in the cause admits the title of the complainant to the farm or tract of land, and the location thereof and the receipt of said notice, but alleges that the said morocco factory is more than three thousand feet above said farm of complainant, and states that the water of Silver Brook, in flowing that

distance, will become so purified as to render innoxious any matter which might be discharged from said factory in said stream. And they deny that any matter or thing will be discharged from the said factory which will be a material, substantial, and irreparable injury to the said complainant in her use of the water of said Silver Brook for the purposes in said bill mentioned.

They deny that they will discharge, or permit to be discharged, from said morocco factory, directly or indirectly into the waters of said Silver Brook, any noxious or offensive matter or refuse, or any impure or foul water which will so pollute, discolor, or injure the waters of said brook as to render them unfit for watering livestock and for general farming, agricultural, and domestic purposes; and say that most of the things described in said bill as noxious and offensive refuse will be saved and utilized by the defendants, and that the others of them, even if discharged into the waters of said Silver Brook, would not so pollute, injure, or discolor the said waters as to render them unfit for the watering of livestock and the other purposes in the said bill mentioned.

They also say, in their answer, that they have made and will make such arrangements and devices as will, in their opinion and in the opinion of experienced and competent persons whom they have consulted, effectually prevent the discharge from said factory of any matter or thing which will so pollute, foul, or discolor the waters of said Silver Brook as to render them unfit for the use of the complainant for the purposes in said bill mentioned.

They also state that the rights and duties of the complainant and defendants in respect to the waters of said Silver Brook have never been ascertained or established by an action at law; and that the apprehended injuries complained of in said bill are such as are susceptible of adequate pecuniary compensation in damages; and that

they are ready and willing and abundantly able to pay any damages which may at any time hereafter be sustained by the complainant by reason of any unlawful act or neglect of them, the said defendants, in respect to the said waters.

The defendants also say that the erection and operation of said morocco factory are lawful and useful, and are not *per se* nuisances; and that the apprehended injuries complained of in said bill are at most uncertain, indefinite, and contingent; and that it cannot now be definitely or certainly established or ascertained that the said factory or the operation thereof for the manufacture of morocco will cause any loss or injury to the complainant; and they deny that the complainant is entitled to any equitable relief whatever in the premises.

Soon after the filing of said answer, a motion was made for the dissolution of the preliminary injunction; and, upon the question as to whether affidavits should be read on motion to dissolve said injunction, the Chancellor decided, under Rule 64 of Equity Rules, that, the case being not of so pressing a nature that there was not time for the examination of witnesses, an examiner should be appointed to take the testimony of witnesses on both sides, for and against the motion to dissolve; but that if the defendants' counsel insisted that his motion to dissolve the injunction was of so great urgency as to preclude this, *ex parte* affidavits might be read; complainant's counsel offering affidavits already taken in support of the bill.

Afterwards one or more attachments for contempt for the violation of said preliminary injunction were granted, which by agreement of solicitors on both sides, the chancellor consenting, were discharged.

Finally, the preliminary injunction granted in this cause was, without opposition of defendants' counsel, and by consent, made perpetual.