SECURITY TRUST AND SAFE DEPOSIT COMPANY. a corporation under the laws of the State of Delaware, Trustee appointed by the Chancellor under the last Will and Testament of Sarah G. N. Merritt, deceased, and said SECURITY TRUST AND SAFE DEPOSIT COMPANY, Trustee appointed by the Chancellor under the last Will and Testament of Thomas S. Merritt, deceased,

*vs.*

JOHN J. LOCKWOOD, SCHEE MERRITT LOCKWOOD, MABEL LOCKWOOD POOR, OLIVE LOCKWOOD WHITLOCK and ROGER COCHRAN LOCKWOOD.

*New Castle, Sept.* 8, 1922.

Under a will creating a life estate in three daughters, with a contingent remainder over to their surviving children, and providing that, if any daughter died without leaving issue, the property should go to the surviving daughters, where a son of one of the daughters predeceased his mother, his children are entitled to the share he would have received had he lived.

The aim of all construction is to ascertain the intent of the testator, and if his language is such as to indicate that he has given to a word a meaning out of the ordinary, courts will effectuate the testamentary intent, by allowing the testator's manifest definition to stand.

The word "issue" is to be ordinarily understood, when used in wills, to denote lineal descendants.

Under a will creating a life estate in three daughters, and providing that, on the death of the married daughters and their husbands, the whole fund

shall be divided between the children of such married daughters and the unmarried daughter, according to the number of shares given to the three daughters respectively, a remainder became vested in the children of the daughters on birth, and where a son of one of the daughters predeceased his mother, his administrator should receive the share he would have received, had he lived.

BILL FOR CONSTRUCTION OF WILLS AND INSTRUCTIONS TO TRUSTEE. The cause was heard on bill, answers, testimony of witnesses taken orally before the Chancellor and exhibits. At the hearing Nellie C. Lockwood, widow of Schee M. Lockwood, and the mother of Schee Merritt Lockwood, Mabel Lockwood Poor, Olive Lockwood Whitlock and Roger Cochran Lockwood, four of the defendants, asked to be permitted to intervene as a defendant, which permission was granted and she thereupon appeared by a solicitor and filed an answer.

*Charles B. Evans*, for the complainant.

*Francis deH. Janvier*, for the widow and children of Schee M. Lockwood.

*S. Scott Beck*, of Chestertown, Md., and *Charles C. Wallace*, of Baltimore, Md., for John J. Lockwood.

THE CHANCELLOR. This cause necessitates the construction of the will of Sarah G. N. Merritt and also the will of her husband, Thomas S. Merritt. Each will creates a trust fund. The complainant is the trustee for each fund. Though the two trusts are entirely separate and distinct, the trustee nevertheless joins them in one bill and in the same proceeding seeks a construction of both of them. The parties in interest are the same with respect to each trust. No objection has been made on the ground of multifariousness because, I suppose, it is conceived that the question involved under each will can be conviently disposed of in one proceeding. It can be, and I accordingly proceed to consider first the will of Sarah G. N. Merritt, and, having done so, second to consider the will of Thomas S. Merritt.

The will of Sarah G. N. Merritt (dated February 7, 1871, and proved October 4, 1874), insofar as its provisions are pertinent to the present inquiry, gave and devised to the trustee therein named, his heirs and assigns, all the real and personal estate of the testatrix wherever situate, in trust for her three daughters for

and during the terms of their natural lives. After providing for certain expenses and disbursements by the trustee out of the income, the will provided as follows:

" * * * The residue of the income, rents and profits to be paid over to my said daughters, to each one-third part thereof, and immediately after the death of any one or more of my said daughters to grant and convey the deceased one's share (being one-third) to the surviving child or children of said deceased one, that is to say upon the death of Mary N. to grant and convey one-third part of said real estate to her surviving child or children; upon the death of Martha B., to grant and convey one-third part of said real estate to the surviving child or children of said Martha B.; upon the death of Hannah S. to grant and convey one-third part of said real estate to her surviving child or children. My will further is that if one or more of my said daughters should die without leaving issue that the survivors or survivor shall take the deceased · one's portion subject to any and all changes I have made in favor of my said husband or other purposes."

The will provides further that the real estate might be sold. If such sale were made, then the trustee, was directed as follows:

" * * * To invest the net proceeds of the sale of said real estate in such stocks, bonds or securities as he shall think best for the benefit of my said daughters and to collect and receive the income and profits of such investments and pay the same to my said daughters or their legal representatives as the same may come into his hands and is also authorized to sell said stocks, collect said and other securities so invested, and reinvest the same as he may from time to time may deem most advantageous to my said daughters."

The real estate was sold and the trustee segregated the proceeds into three equal funds, holding each of said funds in the trust for the three daughters respectively for life with remainder over as the will provides. It is with respect to the fund held in trust for the daughter, Hannah S., that the trustee asks the instruction of this court. I may say that all sides agree that the language of the will which governs the ultimate disposition of this fund is that which defines the trusts with respect to the property *qua* real estate (the first quoted paragraph of the will, *supra*.)

Hannah S. Lockwood was married and had two children, John J. Lockwood and Schee M. Lockwood, born respectively on July 2, 1874, and April 18, 1870. She died leaving to survive her, her son John J. Lockwood and four grandchildren, the children of Schee M. Lockwood, who predeceased her intestate, leaving a

widow, Nellie C. Lockwood.  Her son John J. Lockwood contends that the entire *corpus* of the one-third held in trust for his mother for life, should be paid to him; and the children and widow of Schee M. Lockwood, deceased, contend that one-half thereof should be paid to John J. Lockwood and the other one-half thereof should be paid to the children of Schee M. Lockwood.

With respect to the share of Hannah S. Lockwood, the trust created a life interest in her, with a contingent remainder over to the surviving child or children, or in default of her issue to her surviving sister or sisters.  Her son Schee M. Lockwood did not survive her.  His interest, contingent on his surviving his mother, was, therefore, never vested in him.  That being so, his widow cannot establish any right to share in the fund.  Indeed, I do not understand her to make any claim to any such right.  His four children, however, are differently situated, for they claim, not as distributees of their father's estate, but as beneficiaries under their great grandmother's (Mrs. Merritt's) will.

Have they any right to the fund under that will?  The language is:

"Upon the death of Hannah S. grant and convey one-third part of said real estate to her surviving child or children."

If the testatrix had said nothing more, then it would seem clear that only a child or children surviving Hannah S. could take. Schee M. Lockwood's estate would not be entitled because he had not survived his mother, nor would his four children be entitled because they would not be embraced within the class of children of Hannah S.  This is conceded by the solicitor for the four children of Schee M. Lockwood.  But the testatrix did not stop with the language above quoted.  She proceeded to provide:

"My will further is that if one or more of my said daughters should die without issue, that the survivor or survivors shall take the deceased one's portion subject to any and all charges I have made in favor of my said husband or other purposes."

Whereas in the clause preceding this one the contingency on which Hannah's sisters' share was to go over in remainder was Hannah's death leaving no child surviving her, the contigency specified in this clause is the death of Hannah "without issue."

·Hence it is argued that the testatrix disclosed an intention to use the words "child or children" as synonymous with "issue," and that the four children of Schee M. Lockwood, being issue of Hannah S., are entitled to share *per stirpes* with John J. Lockwood in the fund in question. My judgment is that this contention is correct.

· Solicitors for John J. Lockwood contend that, instead of permitting the phrase "without issue" to enlarge the natural import of the words "child or children," the reverse should be the case, viz., that "child or children" should be permitted to narrow the meaning of the word "issue." They cite authority to the effect that the word "issue" is to be ordinarily understood, when used in wills, to mean "children" and not to denote lineal descendants. The authorities cited, however, do not sustain this contention. Lord Eldon's decision in *Sibley v. Perry,* 7 *Ves. Jr.* 522, 32 *Eng. Reprint,* 211, is cited in this connection. But on examination it will appear that Lord Eldon in that case said:

> "Upon all the cases this word [issue] *prima facie* will take in descendants beyond immediate issue."

The only reason why he held in that case that "issue" did not extend beyond children was because of the juxtaposition of the words "respective parents" found in the will then before him for construction; for at another point in his opinion he said:

> "Upon all the authorities it must be admitted that, if in the third clause the words 'respective parents' were not inserted, the words 'lawful issue' must be extended beyond children."

I do not consider it worth while to comment on the other authorities cited by the solicitors for John J. Lockwood to sustain the proposition that the word "issue," when appearing in wills, normally is taken to mean children. An examination of those authorities will disclose that, wherever "issue" has been cut down to mean "children," it was because something appeared in the context of the will disclosing the intent of the testator to use the word in the restricted sense. The aim of all construction is, of course, to ascertain the intent of the testator, and if his language is such as to indicate that he gave to a word a meaning out of the ordinary, courts will effectuate the testamentary intent by allow-

ing the testator's manifest definition of terms to stand.   And so cases are found where "issue" has been held to mean "children," and conversely, where "children" has been held to mean "issue." Each word will be accorded its own well-recognized meaning, however, unless something appears in the context to show its use in a different sense.   To hold at this late day that the word "issue" ordinarily means "children" would be to overturn decisions long hallowed by time;   and if the spirit which so defined authority were to prevail generally, legal terminology would be thoroughly unsettled, and for the great merit of certainty, which the law so highly prizes, uncertainty and confusion would be substituted.

So well settled is it that "issue" in its ordinary signification means lineal descendants, that I do not deem it necessary to cite authority in support of the proposition.   Lord Eldon's words in *Sibley v. Perry, supra,* are enough to sustain it.   If "issue," when appearing in wills, means "children" in the absence of an intent appearing to the contrary, as is contended, then courts have wasted much time and effort in considering the question of whether or not in given wills testators had contemplated a definite or indefinite failure of issue in disposing of their estates.   If in the will before me, the word "issue" is to be restricted in its meaning to children, it cannot be because such is the ordinary meaning of the word.

Does the language of the will contain any context that would necessitate the giving to the word of such restricted meaning?   I think not.   Suppose Hannah S. Lockwood died leaving no child to survive her, but leaving grandchildren.   Having, in that contingency, died leaving issue, her interest could not go over to her surviving sisters, because they were to take only in the event of Hannah's dying without issue.   At the same time, if only her surviving children could take, as is contended by John J. Lockwood then, there being no child surviving her, Hannah's interest would be undisposed of.   This was manifestly not the intent of the testatrix, for her will shows that she meant to dispose of *all* her estate. I need not pursue the possibilities of this contingency further by inquiring what would become of the share of Hannah in the event just supposed.   If I did so, the pursuit would bring me out

to a conclusion that would likewise be contrary to the manifest intent of the testatrix.

I am convinced that the contention of John J. Lockwood is not sustainable. *Campbell's Estate*, 202 *Pa.* 459, 51 *Atl.* 1099; *Walker's Estate*, 240 *Pa.* 1, 87 *Atl.* 281. The limitation to Hannah's child or children, in view of the later clause in the will, must be held to mean to them and to the issue of such of them as may have died. The children of her deceased son are not claiming the right to share in the distribution *per capita*. They claim to share *per stirpes*, asking only that one-half of the fund, which would have gone to their father if living, be decreed to them.

The decree will be in accordance with their claim.

2. The will of Thomas S. Merritt is dated October 6, 1874, and was duly proved April 25, 1887. Insofar as it is pertinent to the pending cause, it is as follows:

"First. I give and devise to my three daughters, Mary N. Merritt, Martha B. Pharo, wife of Horatio W. Pharo, and Hannah S. Lockwood, wife of John J. Lockwood, all my lands, tenements and hereditaments situate in the County of New Castle aforesaid, or elsewhere, subject to the control and management of Horatio N. Willits, as trustee for them during their lives respectively with power hereby given to the said Horatio N. Willits with the written consent of my said three daughters to make an amicable partition of my said estate equally between them and upon each partition being made as aforesaid and acknowledged and recorded such shares or parts to be held and managed by the several proprietors thereof, to let and receive the rents and income of the same and to be at the expense of charges, taxes and repairs upon the same, the said trustee being in no way responsible for the rent or management so long as he shall allow the said parties to take and use the shares. And in case of such division or otherwise, the said Mary N. Merritt, Martha B. Pharo and Hannah S. Lockwood may, with the consent of said Horatio N. Willits, sell and convey in fee simple all the said estate or the several parts thereof, so as aforesaid divided to such person or persons as will give the best price therefor to be secured by a purchase money mortgage for all or any part of said money as may be judged expedient to be made to the said Horatio N. Willits, trustee, in his name as trustee of my estate, who shall keep the whole purchase money invested and pay the income and interest accruing less expense of the trust, and other reasonable cost to my said daughters severally in equal shares during their lives and upon the death of either of them leaving a husband and children to such husband for the use of the said children so long as the husband shall live; and after his death, or if he shall have died in his wife's lifetime to such children absolutely for the one-third part thereof of the whole fund or such part as their mother, if living, would

be entitled to, and if either of my daughters shall die leaving no child but a husband, he shall for his life be entitled to the income of such one-third part, and upon the death of both of my said daughters who are married and their husbands the whole of said purchase money shall be divided between the children of my said married daughters and my unmarried daughters according to the number of shares given to my three daughters respectively. And it is further my will that if no sale shall be made of my real estate under the powers herein before given, that each share of the same if divided and assigned shall go to the children of such of my children as may have died, to them and their heirs and assigns, or if undivided to them, the children of my married daughters if any, and to my unmarried daughters in fee, share and share alike, according to the original three parts given to my three daughters, and if there be no child or children surviving of either of my said daughters, then I give the share or shares hereby given to the children of my married daughters to my daughter Mary N. Merritt with her own one-third part in the whole, in fee simple to be disposed of by her as to her own one third part, and the said two other parts should they devolve on her, as she should see fit.

\* \* \* \* \* \*

"Item. It is my will that if either of my married daughters shall die without children or issue living, the other, or children of the other the estate as well in the land or of the proceeds of sale thereof devised to such deceased daughters shall pass and vest in my other married daughter or her children if she be dead and my unmarried daughter, Mary N. Merritt, in fee simple in equal moieties, share and share alike, the children of the deceased daughter taking together one moiety. And it is also my will that the share or part of my real estate hereinbefore devised to my daughter Mary N. Merritt for life as well as her share in the proceeds thereof, if sold, may by her be disposed of by last will and testament made by her in fee simple, or for any less estate, and giving to her the absolute disposal thereof by such last will."

The testator left to survive him the three daughters named in the will, all of whom are now deceased. Hannah S. Lockwood, as before stated, died leaving to survive her one son, John J. Lockwood, who was born July 2, 1874, and four grandchildren, the children of her son Schee M. Lockwood, who was born April 18, 1870, and who predeceased her. It is with respect to the one-third interest which Hannah S. Lockwood enjoyed for life that the present controversy arises, and, as in the case of Mrs. Merritt's will, John J. Lockwood claims all the fund as his mother's only surviving child; and the four children of his deceased brother, Schee M. Lockwood, claim that their uncle, John J. Lockwood, is entitled to only one-half of the fund and that they are entitled to the other half thereof.

Schee M. Lockwood left to survive him a widow, who, has been made a party to the cause, and by her answer she claims that the one-third interest of Hannah S. Lockwood is payable as follows: One-half to John J. Lockwood and the other half, not to her children, but to the administrator of her husband. This is on the theory that the interest of her husband immediately on the testator's death became vested in him as a child of Hannah S. Lockwood, and now that he is deceased, the same is payable to the representative of his personal estate, and not to his children.

The will in question, though loosely drawn, seems clearly to indicate an intent on the testator's part to break the estate into three equal parts, to give one of such parts to each of his married daughters for life, with remainder as to each married daughter's share to her children, and to the issue of any deceased child, such issue to take the share its parent would have taken if living.

While there are several contingencies provided for in the will the facts in the case call for a construction only in case Hannah should die leaving a son and issue of a deceased son.

The testator contemplated several possibilities with respect to the *corpus* of the estate given to the daughters. The trustee might permit the three daughters, each having a life interest, to sell the land without prior division, or he might permit them to make amicable division of the land and, when so divided, sell it, or not sell it, as they chose. Or the trustee could hold the land undivided. The land, as a matter of fact, was sold. It appears to have been so sold after an attempted division. At all events the trustee came into possession of a fund as the share in the proceeds to be held by him under the will in trust for Hannah S. Lockwood for life. It is plain that, after deducting proper charges, she was to receive the income from this fund during her life. Her interest was to terminate upon her death. Now what should be done with it after her death? The testator evidently did not intend that the *corpus* of the fund should then be distributed regardless of what might then be the event. For if Hannah should leave a husband and children, the fund should continue to be held intact by the trustee and the income paid to such husband for the use of the children. And if her husband should not survive her, or surviving her should die, then the language is:

"To such children absolutely for the one-third part thereof of the whole fund or such part as their mother, if living, would be entitled to, and if either of my daughters shall die leaving no child but a husband, he shall for his life be entitled to the income of such one-third part."

Thus far it might be argued that those of Hannah's children who are to take after her death are only those who survive her and that therefore the remainder to her children is a contigent one, dependent on their surviving their mother. This might be the inference to be drawn from the expression "*leaving* a husband and children" and "*leaving* no child but a husband." But immediately following these expressions, the testator provided that upon the death of both the married daughters and their husbands—

"the whole of said purchase money shall be divided between the children of my said married daughters and my unmarried daughters [daughter] according to the number of shares given to my three daughters respectively."

It will be observed that the children who are to share in the distribution are not here confined to such as Hannah may "leave," In this particular, therefore, the intent of the testator, as disclosed by the language just quoted is at variance with what may be deduced by implication from that which precedes.

The foregoing are the testator's directions in case the land is converted into money. Having thus provided for the disposition of the cash proceeds in case of sale, he then proceeds to provide for the remainders after the life estate in case the land is not sold. In that case he directs that if there was a division each share—

"shall go to the children of such of my children as may have died, to them and their heirs and assigns, or if undivided to them, the children of my married daughters if any, and to my unmarried daughters in fee, share and share alike, according to the original three parts given to my three daughters."

Here again the right of Hannah's children is not made contingent on their surviving their mother. This language, like the language preceding it, clearly indicates a vested remainder in Hannah's children. But, and here the testator's language reverts to the idea of the children's rights being dependent on their surviving their parents, the testator proceeds to provide:

"If there be no child or children *surviving* of either of my said daughters, then" over to the unmarried daughter, Mary N. Merritt.

It is apparent that the draftsman of this will was most care-less in the phrasing of the testator's purposes. The language employed looks in different directions at the same time. The precise question to be determined is, whether it was the intent of the testator to create vested remainders in Hannah's children, or contigent remainders dependent upon their surviving their mother. The particular alternative, among the several contemplated by the testator, that is actually presented by the facts, is the death of both married daughters and their husbands; and the provision in that alternative is that each share goes to each married daughter's children without regard to their surviving their mother. That is to say, in that alternative, the remainders are vested. For when a bequest is to one for life and at his death to his children, the remainder vests as soon as a child is born and will open to let in other children as they come into being. *Rubencane v. McKee*, 6 *Del. Ch.* 50, 6 *Atl.* 639; *In re Nelson's Estate*, 9 *Del. Ch.* 1, 74 *Atl.* 851.

In holding as I do, that Hannah's children had a vested remainder payable to them at her death, I am not persuaded to this conclusion solely by a consideration of the language of the will applicable to the specific alternative which the facts supply. Other considerations have great weight in impelling me to this conclusion. If the remainder is not vested in the children, but is contingent only upon their surviving their mother, then it is apparent that issue of children who predecease their mother can take nothing. Yet this would clearly appear not to have been the intent of the testator, for after having provided for the various contingencies in the manner above noted, the testator in a later item of his will recurs to the subject of the devises to his daughters and again expresses his purpose with respect thereto. In this item he provides:

"It is my will that if either of my married daughters shall die without children or *issue living*, the other, or children of the other the estate as well in the land or of the proceeds of the sale thereof devised to such deceased daughters shall pass and vest in my other married daughter," etc.

Here is a clear expression of intent that Hannah's share shall not leave her own blood so long as there may be issue of her to take at her death. If all the clauses of this very inartistically drawn will are to be given what effect they can be given harmo-

niously with each other, then I see no way to reconcile this clause in this item with what goes before, except by holding that the children of each daughter have a vested interest, for thereby the issue of each daughter, through its own stirps (a child of a daughter), shall mediately at least enjoy the possibility of the testator's bounty.

It is, of course, elementary that the whole will must be considered in ascertaining the testator's intent. Taking this will in its entirety, it seems to me that the testator desired to break his estate into three equal parts, giving one of such parts to each of his daughters. Their shares, however, were for life and the trust was created to preserve their respective shares intact. One daughter was repeatedly referred to by him as unmarried, and he never assumed to provide for the contingency of her marrying and having children. He gave her share in trust, therefore, for her benefit for life, with power to dispose of the same by will. This was almost, though of course not entirely, a gift to her of the entire interest in her share. The only thing she could not do was to dispose of the *corpus* in her lifetime. With respect to the other daughters who were married, the same protection against alienation during life was provided. Upon their deaths they could not, however, dispose of their interests by will as could the other daughter. If the testator meant to cut off the issue of these married daughters unless that issue happened to be children surviving, as is virtually contended by John J. Lockwood, then we are to conclude that whereas the unmarried daughter might dispose of her share by will to strangers to the testator's blood, the married daughters must undergo the possibility of seeing their own issue, the testator's own blood made penniless, so far at least as the testator's attitude towards them is concerned. Viewing the will as a whole, I cannot think that such was his intention. While at times his language is loose and exceedingly careless, yet it seems to me that he meant that the shares of his two married daughters were to be enjoyed by each for life and in remainder to vest in their respective children as they came into being.

It therefore follows that Schee M. Lockwood had a vested interest in remainder in his mother's share. Though he died before his mother, yet his estate shares equally with his brother,

John J. Lockwood, in the distribution of the share held in trust for her for life. The trustee will be decreed to pay to his administrator one moiety or half part of the fund so held by it in trust.

Let a decree be prepared in accordance herewith.