FRANK A. WALLACE, EXECUTOR AND TRUSTEE, *vs.*
FRANK A. WALLACE ET ALS.

Third Judicial District, New Haven, June Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

The term "issue" in a will is to be construed as a word of purchase unless it appears from the context and surrounding circumstances to have been used as a word of limitation.

When used as a word of purchase, its primary and, therefore, presumptive meaning is heirs of the body and includes descendants in every degree; but if it appears that it was the intention of the testator to use the term in its more restricted sense of children or grandchildren, it will be so construed.

Where the term "issue" is used in correlation with the word "parent" in phrases such as "parent of such issue," it will be interpreted as meaning the children of the parent referred to, unless a contrary intent appears.

If the word "issue" is apparently used interchangeably with the word "grandchildren," it will be given that meaning unless the context indicates the contrary or unless the words are applied to a different subject.

Under the statute of perpetuities in force in 1892 (§ 2952, Revision of 1888) a gift over after the death of a child of the testator to the issue of such child, was void if the term issue was intended by the testator to include descendants in every degree.

If the word "issue" as used in a will is fairly open to two constructions, one of which renders a gift void as an illegal perpetuity, and the other valid and operative, the latter construction must be preferred.

Courts always endeavor to avoid a construction of a will which will result in partial intestacy.

Wallace *v.* Wallace.

Unless a contrary intent is manifest, a limitation over, after a life estate, to the issue of the life tenant, and, failing issue, to the heirs, or heirs at law, or to the children or grandchildren of the testator or of another than the testator, is a gift to a class and vests in point of right at the testator's death, although the right of possession is postponed until the termination of the life estate; and such a gift embraces as its ultimate beneficiaries both those of the class who are in existence at the death of the testator and such as may subsequently come into being before the time of enjoyment or distribution arrives.

In the present case, the testator, who died in 1892, left a large portion of his estate, consisting of stocks, to trustees with directions that the income should be paid in equal portions to each of his five children and the issue of any child dying before or after his death; that, upon the death of any child without issue and without husband or wife, his or her share should be paid to the surviving children and the issue of any deceased child; and that upon the death of the last survivor of his children the trust should terminate and the *corpus* be distributed among his grandchildren *per stirpes* and not *per capita,* subject to a power in each of the children to designate by will the proportional distribution to be made among his or her respective children. A daughter of the testator died in 1902, leaving five children, one of whom, Henry by name, died intestate in 1924, leaving a widow but no issue. The present suit was brought to determine various questions arising under the will and especially whether the widow of Henry was entitled to the share of the income which he had received during his life. *Held:*

1. That she was entitled, as the sole heir-at-law of Henry, to receive his portion of the income until the termination of the trust, when she will be entitled to the share of the *corpus* of the estate which would have been distributed to him if he had survived.

2. That the respective interests of the children and grandchildren vested upon the death of the testator.

3. That the term "issue" meant children of the testator's children.

4. That the principal of the trust fund vested in the grandchildren as a class upon the testator's death, the class opening to let in afterborn grandchildren.

5. That the provisions of the will did not offend against the statute of perpetuities; and that no portion of the trust fund became residuary or intestate estate.

Argued June 5th—decided July 30th, 1925.

Suit to determine the construction of the will of Robert Wallace, late of Wallingford, deceased, brought

to the Superior Court in New Haven County and reserved by the court, *Simpson, J.,* upon the admitted allegations of the complaint, for the advice of this court.

Robert Wallace was a resident of and domiciled in Wallingford for more than fifty years before his death on January 1st, 1892, leaving a will dated April 16th, 1890, and a codicil thereto dated March 14th, 1891. The seventh article of the will as modified by the codicil and the eighth, ninth, tenth and eleventh articles of the will are as follows:

"Seventh. All the stock in the R. Wallace and Sons Manufacturing Company I may own at the time of my death, excepting the eighty (80) shares hereinbefore given to Robert B. Wallace, and excepting the fifty (50) shares hereinbefore given to the children of William J. Wallace, and excepting the ten (10) shares hereinbefore given to my children, Adeline E. Morris, Jeannette A. Leavenworth, Hattie E. Wallace, George M. Wallace, Frank A. Wallace, Della C. Sisson, and Henry L. Wallace, I give and bequeath to my trustees hereinafter named, in trust, and for the following purposes—to wit—to care for and manage the same, to collect the dividends thereon as they may accrue, and to pay over the same to all my children (including the issue of any child that may die before me), in equal shares during the life of my said children, and of the survivor of them, the issue of any of my children dying before or after me to receive the share which the parent of such issue would have received if living: Provided however that any advancements that I may have made at the time of my death to any of my children, and may have charged as such advancements upon my books, shall be taken into consideration in paying over such income or dividends, and that such income or dividends shall be paid to

such children (or the issue of deceased children) as have received no advancements, or have not received advancements equal to others, until they receive an amount equal to such advancements—my intention being, to have each child (and the issue of any deceased child) in the end, receive an equal share of my property as near as may be consistent with the foregoing provisions of my will, the issue of any deceased child to take *per stirpes*.

"Eighth. In case of the death of any of my children without issue, but leaving surviving a husband or wife as the case may be, such husband or wife, so long as he or she remains unmarried, shall be entitled to the income or dividends of such stock so given in trust, which my said child would have received if living.

"Ninth. In case of the death of any of my children without issue and without leaving a surviving husband or wife as the case may be, and in the event of the death of any of my children without issue, but leaving a husband or wife as the case may be, then after the death or re-marriage of such wife or husband, the share of said deceased child in the income and dividends of said stock so given in trust, shall be paid to the surviving children and to the issue of any deceased child; such issue taking the share which its parent would have taken if living.

"Tenth. Upon the death of the last survivor of my children, the trust fund of the stock in The R. Wallace and Sons Manufacturing Company shall terminate, and I then give and bequeath all such stock to my grandchildren, *per stirpes,* and not *per capita,* but subject to the following provisions, to wit: Any of my children is hereby empowered to execute a will limiting and appointing the share or proportion of such stock (which his or her children may receive upon said termination of said trust) among such children,

in such proportions, and upon such conditions as he or she may deem best for his or her children.

"Eleventh. All the rest residue and remainder of my property and estate of every kind and wherever situated I give, devise and bequeath to all my children in equal parts, the issue of any deceased child to have and receive the share which the parent of such issue would have received if living."

The great bulk of the testator's property consisted of the capital stock of the R. Wallace and Sons Manufacturing Company, and at the time of his death he held 2,297 shares of this stock of which 2,097 shares passed to the trustees under article seventh of his will, each share being of the par value of $25. At the present time through increase by stock dividend the trustees hold 23,197 shares of the common and 16,646 shares of the preferred stock, each share being of the par value of $25.

The testator left surviving him four sons and four daughters. One son, Wallace J., predeceased the testator leaving two children. Seventeen grandchildren survived the testator, and five others were subsequently born. No great-grandchildren were in existence during the testator's lifetime. The testator kept himself at all times well informed in reference to the financial condition of each and all of his children and grandchildren, and was well acquainted with the wives and husbands of his several children, and the family relations between the testator and his children and grandchildren were always friendly and pleasant. In the practical administration of the trust fund, and with the consent, acquiescence and approval of all persons in interest, the net income thereof has been distributed from time to time, and one equal portion of the net income has been paid to each one of the children of the testator living at the time of the par-

Wallace *v.* Wallace.

ticular distribution, and one equal portion thereof has been paid *per stirpes* to the children of each deceased child of the testator (that is, to the grandchildren of the testator). This was the method of distribution followed until the death of Henry L. Wallace (one of the children) in 1920, and until his death· the net income was divided into nine equal portions, and was divided as aforesaid *per stirpes* between living children, and the children of deceased children. Henry L. Wallace died in 1920 without. issue and leaving no widow, and thereafter the net income has been divided into eight equal shares, one equal share paid to each living child of the testator, and one equal share *per stirpes* to the children of each deceased child of the testator, and no portion of the income has been paid to the estate of Henry L. Wallace nor to the residuary legatee under his will. Adeline Wallace, one of the daughters of the testator, married D. E. Morris and deceased October, 1902; they had five children, one of whom was H. L. Morris, who married Carrie V. McGaughcy on June 7th, 1899. He died August 4th, 1924, leaving his widow, Carrie M., surviving him, but no issue. Charles D. Morris is the administrator of the estate of Henry L. Morris deceased.

The questions of law which, at the request of the parties, the court has reserved for the advice of this court, are as follows:

(a) In what manner shall the net income of the trust fund created by the will of Robert Wallace now be distributed, one of the grandchildren of the testator, to wit: Henry L. Morris, having died August 4th, 1924, leaving surviving him a widow, but no issue, and is the estate of said Henry L. Morris or his widow, the defendant Carrie V. Morris, now entitled to the share of income which said Henry L. Morris received during his life, or should said share of income hereafter be

divided among the surviving brothers and sister of said Henry L. Morris, or what disposition should be made of said share of income under the present circumstances?

(b) To whom should the share of the net income now received by a grandchild of the testator be paid in the event of the death hereafter of said grandchild leaving a child or children surviving, or leaving a wife or husband surviving but no children, or leaving neither a wife nor husband nor any children surviving?

(c) What interest do the children of the testator who survive him take in the net income of said trust, and what interest do the grandchildren of the testator take in said net income upon the death of their parent?

(d) Does the word "issue" as used in the seventh, eighth and ninth articles of said will include descendants of every degree, or is it to be construed as being restricted to children, and if said word "issue" is to be construed as meaning descendants of every degree, is the provision for the "issue of any of my children dying before or after me" valid and operative, or, if it is invalid and inoperative as being in violation of the statute against perpetuities, how much thereof is invalid and inoperative and what is the effect of such invalidity?

(e) Did the gift of the principal of the trust fund under the provisions of article tenth of the will vest upon the death of the testator in his grandchildren as a class, such class to take in afterborn grandchildren, or is the interest of the grandchildren in the principal of the trust fund contingent upon their being alive at the date of the termination of the trust?

(f) In the event of the death of a grandchild during the continuance of the trust leaving issue surviving, are such issue, if living at the date of the termination of the trust, entitled to any part of the principal

of the trust fund, or is the estate of such deceased grandchild thus entitled, or have neither the issue nor the estate of such deceased grandchild any right, title or interest in any part of said trust fund upon the termination of the trust.

(g) Does any part, and if so, what part of the income or principal of said trust fund pass pursuant to the residuary clause (article eleventh) of said will, or is any part thereof intestate estate of the testator?

*Thomas Hooker,* for the plaintiff.

*James E. Wheeler,* for the defendants, great-grand-children of the testator.

*Oswin H. D. Fowler,* for the defendants, Charles D. Morris, administrator, and Carrie M. Morris.

*Henry Stoddard,* for the defendants, children and grandchildren of the testator.

WHEELER, C. J.   Adeline Wallace Morris was one of the nine children of the testator surviving him. She died in 1902, leaving surviving her five children and never having exercised the power of appointment given her under the tenth article of the will of the testator.  By the consent of all parties in interest the trustees have paid to the five children from the death of their mother until the death of one of these children, Henry L. Morris, on August 4th, 1924, the dividends which their mother would have received had she continued in life.  Henry L. Morris left surviving him his widow, Carrie M. Morris, but no children and no will.  His widow, to whom he was married on June 7th, 1899, is, under Chapter 221 of the Public Acts of 1921, entitled to receive the whole of the estate of her husband on its settlement.  The defendant Charles D.

Morris is the administrator of the estate of Henry L. Morris, which is still in process of settlement. The administrator and Mrs. Morris claim that the administrator is entitled to receive the dividends from the trust created by article seventh of the will of the testator, which Henry L. Morris would have continued to receive had he lived, and that upon the settlement of the estate Mrs. Morris, the widow, as sole distributee, is entitled to receive the dividends from this trust which her husband would have continued to receive had he lived, until the termination of the trust, at which time she will succeed in right to that part of the *corpus* of the trust fund which was bequeathed to Henry L. Morris under the tenth article of the will of his grandfather, the testator. The determination of this claim is the chief purpose of this reservation.

The problem is not under our rules of construction difficult. Its solution requires us to ascertain, in the first place, the meaning of the testator in his use of the term issue in these several articles. Article seventh gave the bulk of the testator's estate, being his stock in R. Wallace and Sons Manufacturing Company, to trustees for certain purposes,—to care for and manage the same, to collect the dividends thereon as they may accrue, "and to pay over the same to all my children (including the issue of any child that may die before me), in equal shares during the life of my said children." The trust was to continue until the death of the last survivor of the testator's children, as is provided in article tenth, which then continues, "and I then give and bequeath all such stock to my grandchildren, *per stirpes,* and not *per capita.*" This gave the control and management of the trust to the trustees until its termination upon the death of the last of his children. During the existence of the trust the children of the testator are to receive the income in

equal shares. Equality of gift of income to his children is a dominant purpose of the testator as expressed in his will. When he makes provision in article third for the ultimate disposition of the proceeds from the sale of his homestead given in trust to these trustees, it is "to pay over to and for the benefit of all my children, in equal shares, the proceeds of said described property." In article seventh in the direction to the trustees is found this provision, "and to pay over the same to all my children . . . in equal shares." And its concluding sentence provides: "My intention being, to have each child (and issue of any deceased child) in the end, receive an equal share of my property." And in the eleventh article the testator provides in the residuary article: "I give, devise and bequeath to all my children in equal parts." Having provided for the distribution to his children of the proceeds of the homestead and the income from dividends received by the trustees from the R. Wallace and Sons Manufacturing Company, the testator provides for the disposition of the income which each child would have received, in the contingency of his death prior to the testator or during the existence of the trust. In article third he provides that "the issue of any deceased child, whether dying before or after me, to receive the share which the parent of such issue would have received if living." In article seventh as to the income from dividends received by the trustees he provides: "The issue of any of my children dying before or after me to receive the share which the parent of such issue would have received if living." And in the concluding sentence he repeats his intention that each child and the issue of any deceased child should receive an equal share of my property, "the issue of any deceased child to take *per stirpes*." In both the third and seventh articles provision is made that the issue of any child dying before

or after the testator shall receive the share which the parent of such issue would have received if living. In the ninth and eleventh articles a like provision is found. That the issue is to take *per stirpes* and the share which its parent would have taken point unmistakably to another dominant purpose of the testator, equality between the issue, whether they be the issue of a child of the testator dying either before or after him.

We pass next to the consideration of who are included in the term issue. This is our governing rule: "The term 'issue,' in a will, is to be construed as a word of purchase, unless it appears from the context and surrounding circumstances to have been used as one of limitation. Its primary, and therefore presumptive, meaning, when used as a word of purchase, is heirs of the body, and includes descendants of every degree. But when the intention of the testator, as evinced by the context and surrounding circumstances, indicates that he used the word 'issue,' not in its larger significance, but in its more restricted sense, it will be construed so as to effectuate the testator's intent and to be synonymous with children or grandchildren." *Stamford Trust Co.* v. *Lockwood,* 98 Conn. 337, 344, 119 Atl. 218; *Bartlett* v. *Sears,* 81 Conn. 34, 39, 70 Atl. 33. Is the term "issue" used in this will in its restricted sense, grandchildren? The provision to which we have referred in article seventh, "the issue of any of my children dying before or after me to receive the share which the parent of such issue would have received if living," is repeated in substantially identical language in articles third, ninth and eleventh. Who would in the ordinary uses of language be understood as the "parent of such issue" if not the father or mother? And in this will the parent referred to is one of the children of the deceased. Issue as here

used in the ordinary uses of our language would be understood to be the children of the testator's children, that is, his grandchildren, unless indeed, a contrary intention was manifest in the will interpreted in the light of the surrounding circumstances. Where the term issue is used in correlation with parent, we have held in construing other wills that children were meant by issue, and such has been the general holding elsewhere. In *Mitchell* v. *Mitchell,* 73 Conn. 303, 305, 47 Atl. 325, we were called upon to construe this provision in a will: "But if one or more of the said four children of L. Mitchell shall have died leaving issue of his or her body, said issue shall receive the same portion that his or her parent would be entitled to if living." We disposed of the question concerning the meaning of "issue" in these few words: "The word 'issue,' as used in the tenth section of the will, means children. It includes only such issue as can take from a parent, *i. e.* children." See also *Austin* v. *Bristol,* 40 Conn. 120, 134, 135; *King* v. *Savage,* 121 Mass. 303, 306; *Chwatal* v. *Schreiner,* 148 N. Y. 683, 689, 43 N. E. 166; *Gammell* v. *Ernst,* 19 R. I. 292, 33 Atl. 222; 33 Corpus Juris, 821, cases cited in note 23; 23 Cyc. 365, cases cited in note; 17 Amer. & Eng. Ency. of Law (2d Ed.) 547, and cases cited. If we turn to the eleventh article the gift of the residue is to the issue of any deceased child of the testator; if we turn to the tenth article it gives the *corpus* of the trust fund to "my grandchildren, *per stirpes,* and not *per capita.*" These words, issue and grandchildren, are used in the same sense "unless a contrary intention appear by the context, or unless the words be applied to a different subject," which does not appear in this case. 2 Jarman on Wills (5th Amer. Ed., Vol. 3, pp. 702-709) pp. 840-843; *Pease* v. *Cornell,* 84 Conn. 391, 400, 80 Atl. 86; *Bridgeport Trust Co.* v. *Parker* 97 Conn. 245, 249, 116

Atl. 182. The issue of his son William J. Wallace who predeceased him, are spoken of in the seventh article as children of William J. Wallace and elsewhere in the will as issue. Under this rule it follows that the testator uses, interchangeably, issue, his grandchildren, and the children of his children. If the meaning of "issue" be descendants, the provisions of this will relating to such issue are void within our statute in force at this time, General Statutes, 1888, § 2952, being illegal perpetuities. *Leake* v. *Watson,* 60 Conn. 498, 506, 21 Atl. 1075; *Tingier* v. *Chamberlin,* 71 Conn. 466, 42 Atl. 718; *Nicoll* v. *Irby,* 83 Conn. 530, 533, 77 Atl. 957. Our rule of construction under such circumstances is that stated in *Wolfe* v. *Hatheway,* 81 Conn. 181, 185, 70 Atl. 645: "If two modes of construction are fairly open, one of which will turn a bequest into an illegal perpetuity, while by following the other it would be valid and operative, the latter mode must be preferred." See also *Hoadley* v. *Beardsley,* 89 Conn. 270, 277, 93 Atl. 535; *White* v. *Smith,* 87 Conn. 663, 673, 89 Atl. 272. There is a presumption against the intent of a testator to leave any part of his estate intestate and "courts will endeavor to avoid a construction of a will which will result in partial intestacy." *Burr* v. *Tierney,* 99 Conn. 647, 654, 122 Atl. 454. Since issue in this will means the children of the testator's children, or the grandchildren of the testator, we next inquire when did their right to the income begin and when did it cease? In a recent case we answered this in the summary of our law which we there gave: "We have uniformly held that unless the will sufficiently expresses a contrary intent, a limitation over, after a life estate, to the issue of the life tenant, and, failing issue, to the heirs, or heirs at law, or to the children or grandchildren of the testator, or to children of another than the testator, are gifts to a class, and vest

in point of right upon the testator's death, although their right of possession is postponed until the termination of the life estate. We have adopted this rule in the belief that it leads to the early vesting of estates, and will carry out the probable intent of the testator, where the will indicates no contrary intent." *Close* v. *Benham,* 97 Conn. 102, 103, 104, 115 Atl. 626; *Norton* v. *Mortensen,* 88 Conn. 28, 89 Atl. 882; *Bartram* v. *Powell,* 88 Conn. 86, 89 Atl. 885. The will neither directing nor indicating a contrary intention, this rule of law prevails and these grandchildren took as a class at the death of the testator, a vested interest in the income which the parent of such grandchild would have received if living and which was an alienable and transmissible interest; the class opening to let in afterborn grandchildren.

The same rule governs the disposition of the proceeds of the homestead in article third, and the distribution of the *corpus* of the trust fund in article tenth, in which the testator provides that upon the death of the last survivor of his children the trust shall terminate, and, he says, "I then give and bequeath all such stock to my grandchildren, *per stirpes,* and not *per capita.*" That rule is "that where a will contains a limitation over to children, whether of the testator, the first taker, or other person, with the right of enjoyment or time of distribution postponed, it will, in the absence of a clear expression in the will of a contrary intent on the part of the testator, be construed as one to the children as a class, vesting in interest immediately upon the death of the testator, and embracing as its ultimate beneficiaries both those children who are in existence at the death of the testator and such as may subsequently come into being before the time of enjoyment or distribution arrives." *Bartram* v. *Powell,* 88 Conn. 86, 89, 89 Atl. 885.

There is nothing in the will expressing or implying a right of survivorship among the grandchildren. There is no gift over to any one after the gift to the grandchildren. In short, there is nothing in the will to indicate in the slightest degree that the testator intended that the interest of the grandchildren in the dividends should cease in case of their death prior to the termination of the trust, nor that their interest in the *corpus* of the trust fund should cease in case of their death prior to its distribution. The interest of the grandchild was absolute subject only to the power of appointment given in article tenth, in which the testator provided, "any of my children is hereby empowered to execute a will limiting and appointing the share or proportion of such stock (which his or her children may receive upon said termination of said trust) among such children, in such proportions, and upon such conditions as he or she may deem best for his or her children." This power of appointment did not divest her children of the right to the *corpus* vested in them, it never having been exercised by Mrs. Morris. Under our construction of this will Henry L. Morris took an indefeasible and absolute share, namely, one fifth of the dividends which his mother would have received had she lived up to the termination of the trust, and is entitled to one thirtieth of the *corpus* of the trust fund upon its distribution, and that the same descends to his widow under the law.

The Superior Court is advised that the questions upon which the advice of this court is desired, we answer as follows:

2. (a) The estate of Henry L. Morris is entitled to one fifth of the share of the income from the trust fund which Henry L. Morris would have received during his life pending the settlement of the estate, and thereafter the widow, Carrie V. Morris, is entitled

to the balance remaining after such settlement by right of descent.

(b) Upon the death of a grandchild leaving a will, its valid dispositions of the net income vested in him by article seventh will govern; in the event that the grandchild leave no will, the said share of the net income will go to his estate and upon its settlement the balance and the share of the net income thereafter and until the termination of the trust, be distributed under the statute of distribution of intestate estates.

(c) Both children and grandchildren take a vested interest which takes effect upon the death of the testator.

(d) "Issue" as used in the seventh, eighth and ninth articles means children.

(e) The principal of the trust fund vested in the grandchildren as a class upon the death of the testator; the closs opening to let in afterborn grandchildren.

(f) Upon the death of a grandchild during the continuance of the trust leaving issue, that is children, at the termination of the trust, and leaving a will, its valid dispositions of the principal of the fund vested in him under and by article tenth, will govern; in the event that the grandchild leave no will, the said share of the principal of the fund will go to his estate and upon its settlement the balance be distributed under the statute of distribution of intestate estates.

(g) No.

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.