IN THE MATTER OF THE ESTATE OF

JOEL FRIST, DECEASED.

*New Castle, June 24, 1932.*

*John J. Morris, Jr.,* for petitioner.
*James M. Malloy,* for Henry M. Frist, trustee.

THE CHANCELLOR: There is no dispute of fact between the parties. Joel Frist died in November, 1891, leav-

ing a last will and testament in and by which, after directing the conversion of his entire estate into money, he bequeathed one third thereof to his two sons, George Frist and Henry M. Frist, in trust to invest and pay the income to his daughter, Rachel Waddington,

"But in the event of my said daughter, Rachel Waddington dying without leaving issue her surviving; then, and in that event, it is my will, that the portion of my estate (being the one-third part thereof) which was held in trust by my executors for my said daughter's benefit, during her life time only, shall be equally divided between my two sons, George Frist and Henry M. Frist. absolutely; in case they are both living at the time of my said daughters death: but in the event of either of my said sons dying during my daughter's lifetime without leaving issue him surviving. then, and in that event, the share he would have taken under this my will. at his sister's death; shall become (at her death) the property absolutely of my then surviving son. But in the event of either of my two sons dying, during the lifetime of his sister (Rachel Waddington) leaving issue him surviving: it is my will, that such issue shall take amongst them jointly, such part of my estate at the death of my said daughter, as his, her or their deceased father would have taken under this my will, had he been living at the time of my said daughter's death (without leaving issue her surviving)."

The two sons and the daughter survived the testator. George Frist died September 15, 1928, leaving the respondent as sole trustee. He left to survive him a son Homer, who died March 31, 1931, leaving the petitioner, his daughter, as his only issue.

Thereafter Rachel Waddington, the life beneficiary under the trust, died without leaving issue on May 4, 1931.

The question which the petition and motion present is whether the petitioner, Margaret Frist Wallis, the great granddaughter of the testator, and the sole surviving issue of his son George, is beneficially entitled to a one-half interest in the trust corpus, her great uncle, Henry M. Frist, being entitled to the other half; or whether the latter is entitled to the whole.

The will provides that upon the decease of the life beneficiary, the testator's daughter, without issue (as has

happened), the trust *res* shall be equally divided between the testator's sons, George and Henry M., in case they are both then living; but if either should then be dead "without leaving issue him surviving, then * * * the share he would have taken * * * shall become (at her death) the property absolutely of my then surviving son." Looking at the will only thus far, the sole condition upon which Henry M. Frist, as surviving brother, could claim to be entitled to the whole has not been fulfilled, for his deceased brother has left issue in the person of a grandchild, the petitioner. If she cannot take, there would then be an intestacy as to the one-half. The testator did not intend an intestacy as to any part of his estate.

It is contended, however, by the solicitor for Henry M. Frist that the word "issue" as used in the clause of the will just quoted, is not to be given the meaning of issue in the large sense of lineal descendants generally but that its meaning is to be restricted to only those of the issue who are children.

The word "issue" in its ordinary signification means lineal descendants generally and is not synonymous with "children." *Security Trust, etc., Co. v. Lockwood, et al.,* 13 *Del. Ch.* 274, 118 *A.* 225. In the same case it was observed that "issue" may mean "children," and conversely the latter may mean the former, according as the testator's intent, gathered from the context of the will, might reveal.

In the instant case it is contended in behalf of Henry M. Frist that a context is found in the will which discloses the word "issue," where it appears in the condition annexed to the gift to him as surviving brother, to have been used by the testator as the equivalent of child or children; that is to say, that the testator's intent was that if either son should predecease the life beneficiary without leaving a child or children the survivor should take his share.

This is based on the later clause where provision is made for the issue of a deceased son as follows:

"But in the event of either of my two sons dying during the lifetime of his sister (Rachel Waddington) leaving issue him surviving, it is my will that such issue shall take amongst them jointly, such part of my estate at the death of my said daughter, as his or their deceased father would have taken under this my will, had he been living at the time of my daughters death."

It is contended that the use of the word "father" in conjunction with "issue" shows that only the immediate issue, viz., children, were in the mind of the testator.

The leading case which is cited to sustain this contention is *Sibley v. Perry*, 7 *Ves., Jr.* 522, 32 *Eng. Rep.* 211, in which Lord Eldon held that when a gift is to the issue of a parent, children are meant. Though that case has been consistently followed in England, yet it has encountered some rather severe criticism in that country. See *Ralph v. Carrick, L. R.* 11 *Ch. Div.* 873, decided in 1879, and particularly the language of *Brett, L. J.*, at *page* 884, where he stated that he would have no objection to be present at the funeral of *Sibley v. Perry*. It is interesting, however, to note that as late as 1916 the much discussed case of *Sibley v. Perry* was again approved by the English Court of Appeal and the Master of the Rolls in the course of his opinion took occasion to express himself as entirely averse to following its funeral. *In re Timson*, (1916) 2 *Ch.* 362.

Cases are to be found decided in the American reports which follow *Sibley v. Perry, supra.* The solicitor for Henry M. Frist refers to some of them on his brief. I shall not pause to review them. It is enough to say that very respectable and probably the weight of authority supports *Sibley v. Perry*.

It is to be observed, however, that in some jurisdictions in this country, the rule laid down in that much discussed case seems to have been directly rejected. *Union Safe Deposit & T. Co. v. Dudley*, 104 *Me.* 297, 72 *A.* 166; *U. S. Trust Co. v. Tobias*, 21 *Abb. N. C.* 392, 4 *N. Y. S.* 211. And even where it was followed in *Coyle v. Coyle*, 73 *N. J. Eq.* 528, 68 *A.* 224, the Vice Chancellor confessed that he followed it only because of the weight of authority behind it.

In *Jackson v. Jackson,* 153 *Mass.* 374, 26 *N. E.* 1112, 1113, 11 *L. R. A.* 305, 25 *Am. St. Rep.* 643, it was said:

"We think that, as a matter of verbal construction, it would be as easy and natural to say that, where the words 'parents' and 'issue' are used in connection with each other, the word 'parents' means 'ancestors,' as that the word 'issue' means 'children,' and in the construction of any instrument it is always necessary to look beyond the literal meaning of words."

The case of *Sibley v. Perry, supra,* does not lay down a rule of construction. "It [the so-called rule of *Sibley v. Perry*] is merely one consideration to be weighed with others in an estimate of a testator's meaning." *Matter of Farmers' Loan & Trust Co.,* 213 *N. Y.* 168, 107 *N. E.* 340, 342, 2 *A. L. R.* 910. The weight of authority, as before stated, appears to support the rule. But in no case do I find it laid down as an inflexible rule of construction that where "issue" and "parent" are conjoined, the latter restricts the former to "children." Indeed, as I read the opinion of Lord Eldon himself who was the first to allow "parent" to restrict "issue," it was not his purpose to announce an unyielding principle of construction, for he consulted the context of the will and found evidence therein from which he concluded that when the testator referred to issue he meant children. "Upon the whole will," he said, "I incline to the opinion, that he meant children.   *   *   *  I shall express the ground of my opinion in the declaration. Declare, that upon the true construction of this will and the whole of it taken together the testator by the words 'lawful issue' in these two clauses meant children."

In the case of *In re Timson, supra,* Lord Cozens-Hardy, M. R., said:

"There has been a discussion as to the principle which ought to govern us in construing a will of this kind and the extent to which what is well known in the text books as the rule in *Sibley v. Perry* or in *Pruen v. Osborne* should be adopted. That rule seems to govern the case unless there is some context which enables us to take a different view. But in saying that, I do not mean that the court must rely solely upon that rule; regard must be had to the whole will. It is a fallacy to say: 'Look at *Sibley v. Perry*—that is a *prima facie*

rule—and see whether there is anything to cut it down.' We must consider the whole will."

The principal ground on which criticism of *Perry v. Sibley* has been rested is, that it alters the course of distribution implied in the word "issue" and results in favoring one branch of the family to the exclusion of another, and if applied to its logical end to the enrichment of strangers to the blood as against the testator's own descendants. See the observations of James, L. J., in *Ralph v. Carrick, supra.*

It is within the bounds of accuracy to assert, without burdening this opinion with the citation of cases to demonstrate, that the courts both in England and America which recognize and accept *Sibley v. Perry* as an authority, search the context of wills very carefully to discover if possible some evidence of an intent on the part of the testator from which it could be concluded that "issue," notwithstanding the restrictive implication inherent in the correlative word "parent," nevertheless embraces all the lineal descendants.

In the present case we do not find the word "parent" in connection with "issue." We find here the word "father." Father is just a little short of being a synonym of parent. Parent means father and mother. Inasmuch as the testator was speaking only of sons, "father," in his use of the word, was the equivalent of parent. I can see no reason, based on the word "father," for differentiating this case from those cases, which are the familiar ones, where "parent" appears in testamentary correlation with "issue." *Arnold v. Alden,* 173 *Ill.* 229, 50 *N. E.* 704.

If that portion of the will which is quoted near the outset of this opinion were all of it that is of value for interpretative purposes, I would be required to say whether *Sibley v. Perry* should be followed in this State.

But even accepting that case as correctly decided, yet there are other parts of the will, however, which are sufficient in my mind to overthrow it as controlling. I shall now proceed briefly to examine the rest of the will.

After providing for the payment of debts and funeral

expenses, the testator directed that his entire estate, real and personal, should be converted into money. He then broke the total proceeds into three parts. One-third he gave absolutely to his son George; another third he gave absolutely to his son Henry M.; and the last third he put in trust for his daughter, Rachel Waddington, for life, remainder over to her issue, if any her surviving, "in equal parts or shares to them, absolutely. But in the event of my said daughter Rachel Waddington dying without leaving issue, etc.," as hereinbefore quoted.

Now in this part of the will it is apparent that the testator wished an equal division among his three children. As between his sons George and Henry M., each was to receive an absolute share in possession. There was no indication at this point of a desire that the share of one should be augmented in case the other died without children. Each took his share absolutely and, if he could preserve it to pass on to others after death, the testator was content to have it so—either to children, grandchildren or even to strangers.

Not only so, but as to the share given in trust for the daughter, he provided that if she left issue, such issue generally, however remote, should take it upon her death and hold it absolutely.

It therefore appears that as to each third part in the primary division, there was absolute equality between the three children so far as quantum is concerned. George took absolutely, Henry M. took absolutely, and the daughter as head of a stock took absolutely, by which I mean that she with her issue, considered as one, took absolutely.

If George had died intestate leaving only grandchildren his original third, if still intact, would have gone to them through his administrator. So also would it be in Henry M.'s case. And so too would it have been in the daughter's case, with this variation only, that her issue would have taken through the trustees directly under her father's will.

Now is it likely, with that sort of general scheme of disposition among his children, that the testator meant that

in case anything came over in remainder by reason of Mrs. Waddington's death without leaving issue, a departure should be made in this principle of equality between George and Henry? The word "issue," which was the testator's word, if allowed its unrestricted meaning, would suggest a negative answer. If "parent" or "father" were allowed to restrict issue to "children," then the principle of stirpital equality which is so plainly manifest throughout the rest of the will would be departed from.

It is plain that if Mrs. Waddington died leaving only grandchildren as her issue, such issue would have taken her share. The testator so intended. In connection with the share of his daughter and her issue, the testator thus showed that his children and their immediate offspring were not the sole objects of his bounty. It would seem unreasonable to say that the testator wished his daughter's share to go to her issue however remote, but that if her share went over for failure of her issue to her brothers or their issue, he was unwilling that any of the issue of the brothers' should take if they were more remote than children. Suppose both brothers had died in the lifetime of the sister, leaving issue but no children, the construction contended for in behalf of Henry M. Frist would, in the event of the sister's death without issue, which has happened, make it impossible for such issue to take her share. A partial intestacy would thus result.

I have before stated that the Supreme Judicial Court of Massachusetts observed in *Jackson v. Jackson, supra,* that as a matter of verbal construction it is as easy to enlarge parent to ancestor as to restrict issue to children. I conclude here that, in view of the whole will, it is easier to enlarge "father" into ancestor or forbear than to restrict "issue" to children.

This will is loose and careless in its use of the words in question. One word or the other must be made to yield some concession from its ordinary meaning, the one by way of enlargement, the other by way of restriction. In view of

the whole will, I am of the opinion that "father" should be enlarged rather than that "issue" should be restricted.

The rule will be made absolute.