WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Trustee under the Last Will and Testament of Charles F. Burnside, deceased,

*vs.*

BESSIE BURNSIDE CHAPMAN, ELIZABETH MACIVOR CHAPMAN, FREDERICK WILLIAM CHAPMAN, ROBERT BURNSIDE CHAPMAN, MARIAN ELIZABETH BURNSIDE, ELLEN MARJORIE BURNSIDE, GRACE GRAY BURNSIDE, MARGARET BURNSIDE HILDERBRAND, MARGARET ELIZABETH HILDERBRAND, MARIE SCHWARTZ BOOTH, GEORGE HENRY BOOTH, BETTY BARTON BOOTH, GEORGE B. SCHWARTZ, ROBERT M. SCHWARTZ, ROBERT M. SCHWARTZ, JR., JACK BOGART SCHWARTZ, RICHARD SCHWARTZ, FRANK R. SCHWARTZ, FRANK R. SCHWARTZ, JR., WILLIAM BURNSIDE SCHWARTZ, JOSEPH SHERMAN SCHWARTZ, FREDERICK H. SCHWARTZ, FREDERICK H. SCHWARTZ, JR., GEORGE M. SCHWARTZ, SUZANNE SCHWARTZ, AND MARGARET B. HILDERBRAND, Administratrix of Lulu Burnside Buckingham, deceased.

*New Castle, Jan. 24, 1934.*

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for complainant.

*John Biggs, Jr.,* for Lulu Burnside Buckingham.

*Paul Leahy,* and *George E. Landis,* of Columbus, Ohio, for the children of Minnie Burnside Schwartz, deceased.

*James H. Hughes, Jr.,* of the firm of Ward & Gray, for the grandchildren of Minnie Burnside Schwartz, deceased.

THE CHANCELLOR: This case calls first for the construction of the will of Charles F. Burnside, who died May 23, 1928; and second for instructions to his testamentary trustee upon the question of apportionment of interest upon coupon bonds between the estate of Lulu Burnside Buckingham, who was a life beneficiary, and other life beneficiaries.

First, as to the construction of the will. The question in this connection arises under the fifth item of the testator's will. By that item the testator gave his residuary estate to the complainant as trustee. He directed that upon his death it be divided into as many equal parts as he should have "sisters and lawful children then living, and sisters and lawful children then dead represented by issue then living." He left to survive him two children, viz., Donald Drake Burnside who died December 19, 1932, leaving two children, and Bessie Burnside Chapman, who is living and has three children; two sisters, viz., Lulu Burnside Buckingham, who died August 9, 1931, without issue, and Margaret Burnside Buckingham, who is living and has one child; and five children of a pre-deceased sister (Minnie Burnside Schwartz), each of whom is living and has chil-

dren, all of whom were born before the testator died. The residue of the estate was therefore divided by the trustee into five equal parts. Having directed a division of the residue of his estate, the testator provided that the parts should be held in trust and the income from one of said parts paid to each of his living sisters and children for life and upon the death of any such sister or child the corpus of the part set aside for that one should be transferred "in equal shares unto the issue of such sister or child," free from any trust; and if any sister or child should die leaving no issue surviving, then the corpus set aside for that one should "be divided equally among and added to the remaining parts of this trust fund." Then follows this language, which is the direct occasion for the controversy under the present head:

"As to any of said equal parts of this trust fund set aside for the issue of any deceased sister or deceased lawful child, I direct my said Trustee to pay over the net income from any such part, in equal shares, unto the issue of such deceased sister or deceased lawful child of mine until said issue respectively attains the age of forty (40) years, except that in the event of any of said issue being under twenty-one (21) years of age, I direct that my Trustee pay over to or for the benefit of such issue only such portion of the net income from their respective shares as, in the discretion of my Trustee, may be required for their respective maintenance, support and education during the minority of any of such issue, and upon any of such issue attaining the age of twenty-one (21) years, to pay over to him, her or them any accumulated income from their respective shares. Upon any of such issue of a deceased sister or deceased lawful child of mine attaining the age of forty (40) years, I direct my said Trustee to assign, transfer and pay over, absolutely and free and discharged from any trust, unto such issue his or her equal share of the part of this trust fund set aside for such issue. Should any of said issue of a deceased sister or deceased lawful child die after my death and before attaining the age of forty (40) years, I direct that the share set aside for the issue so dying shall be distributed equally among the shares of any surviving issue of said deceased sister or deceased lawful child, and in the event of no surviving issue then said share or shares shall be added to the parts of this trust fund set aside for my other sisters and/or lawful children, and or their issue."

How is the word "issue" as used in the will to be interpreted? That is the question. Is it to be understood as meaning that the issue of Mrs. Schwartz would take their interest *per capita?* If so, the children of the children of Mrs. Schwartz would share equally with all their ancestors. If the issue of Mrs. Schwartz, however, are to take their interests on the principle of a stirpital division, then, of course, each child of Mrs. Schwartz is the head of a stock and the respective rights of her issue are determined according to the principles of representation and degrees of kindred.

The argument in behalf of the grandchildren of Mrs. Schwartz starts with the proposition that the word "issue" in the absence of phraseology indicating a contrary intent, includes lineal descendants generally. That "issue," without qualifying context, in its ordinary signification means lineal descendants was held by this court in *Security Trust Co. v. Lockwood,* 13 *Del. Ch.* 274, 118 *A.* 225, and *In re Estate of Joel Frist,* 18 *Del. Ch.* 409, 161 *A.* 918. To say, however, that the rule of those two cases allows children to compete with their living parents, as appears to be said on one of the briefs before me, is to deduce from them a proposition which they neither assert nor even so much as consider. Those cases deal with "issue" as a word designative or descriptive of beneficiaries. They do not touch upon the question which is here involved, viz.—When issue are designated generally as beneficiaries, are the issue to take their interests on a *per capita* or on a *per stirpes* basis?

The authorities are not harmonious upon the question. In *Freeman v. Parsley,* 3 *Ves., Jr.* 421, 30 *Eng. Reprint* 1085, decided in 1797, Lord Chancellor Loughborough held that where the gift is to issue generally the division must be between all the issue living at the testator's death and that accordingly children should share with parents in an equal distribution. The Chancellor admitted that his decision was probably at variance with the testator's intention. He decided as he did, however, because he could see

no middle ground between admitting grandchildren with children as participants and excluding grandchildren altogether. Of course, if he had adopted the scheme of the statutes of descent and distribution which are based on the principle of stocks, the middle ground which he could not find would have been supplied to him.

There are American cases which follow *Freeman v. Parsley.* See *McPherson v. Snowden,* 19 *Md.* 197; *Soper v. Brown,* 136 *N. Y.* 244, 32 *N. E.* 768, 32 *Am. St. Rep.* 731; *Schmidt v. Jewett,* 195 *N. Y.* 486, 88 *N. E.* 1110, 133 *Am. St. Rep.* 815; *Gest v. Way,* 2 *Whart.* 445; *Wistar v. Scott,* 105 *Pa.* 200, 51 *Am. Rep.* 197; *Corbett v. Laurens,* 5 *Rich. Eq.* (*S. C.*) 301; *Gourdin v. Deas,* 27 *S. C.* 479, 4 *S. E.* 64; *Ridley v. McPherson,* 100 *Tenn.* 402, 43 *S. W.* 772; *Pearce v. Rickard,* 18 *R. I.* 142, 26 *A.* 38, 19 *L. R. A.* 472, 49 *Am. St. Rep.* 755; *Price v. Sisson,* 13 *N. J. Eq.* 168; *Weehawken Ferry Co. v. Sisson,* 17 *N. J. Eq.* 475; *Security Trust Co. v. Lovett,* 78 *N. J. Eq.* 445, 79 *A.* 616. As already stated Lord Loughborough expressed the apprehension that the rule adopted by him and accepted in these American cases was violative of the testator's intention. To the same effect in substance is the comment by Vice Chancellor, Sir R. T. Kindersley, in *Cancellor v. Cancellor,* 2 *Dr. & Smale,* 194, 62 *Eng. Reprint* 595. That the rule of these cases is probably subversive of the testator's intent is also the view of Chancellor Kent (4 *Kent's Commentaries,* 278), and Judge Redfield (2 *Redfield on Wills,* [3rd *Ed.*] *Ch.* 1, *Section* 3).

In 1891 the court of last resort in Massachusetts in the case of *Jackson v. Jackson,* 153 *Mass.* 374, 26 *N. E.* 1112, 1113, 11 *L. R. A.* 305, 25 *Am. St. Rep.* 643, declined to accept the rule adopted by these cases which, as has already been indicated, was the subject of criticism and, when followed, was at times accompanied with something in the nature of an apology to testators for a frustration of their probable intent. In *Jackson v. Jackson, supra,* the Massachusetts court flatly stated its conclusions to be that when a bequest after a life interest is to the life beneficiary's "issue

then living, it is to be presumed that the intention was that the issue should include all lineal descendants, and that they should take *per stirpes*, unless from some other language of the will a contrary intention appears." The principle of *Jackson v. Jackson, supra,* has since been reaffirmed by *Ernst v. Rivers,* 233 *Mass.* 9, 123 *N. E.* 93, and accepted in *Re Mayhew's Estate,* 307 *Pa.* 84, 160 *A.* 724, 83 *A. L. R.* 149; *Stamford Trust Co. v. Lockwood,* 98 *Conn.* 337, 119 *A.* 218; *Rhode Island Hospital Trust Co. v. Bridgham,* 42 *R. I.* 161, 106 *A.* 149, 5 *A. L. R.* 185; *Union Safe Deposit & Trust Co. v. Dudley,* 104 *Me.* 297, 72 *A.* 166; *Rembert v. Vetoe,* 89 *S. C.* 198, 71 *S. E.* 959, 2 *A. L. R.* 918; *Duncan v. Clarke,* 106 *S. C.* 17, 90 *S. E.* 180.

The trend of the modern decisions has been quite definitely away from the earlier ones in which the word "issue" when used in such connection as the present one, without any qualifying context, was held to be understood as having a *per capita* meaning whereby children are admitted as sharers with parents in the enjoyment of a bequest. In some of the jurisdictions from which cases are first cited *supra,* if the courts have not frankly reversed their previous decisions, they have manifested a very clear inclination to do so. See *In re Mayhew's Estate,* in Pennsylvania, *supra,* practically repudiating the earlier Pennsylvania cases, where the other jurisdictions are referred to in which the courts in later cases have revealed a dissatisfaction, implied at least, with the decisions in the earlier ones.

In this jurisdiction the question has never been passed upon. In so far as this court can settle the question here, it will do so by holding that the word "issue" when used as a word of purchase in such connection as the present, while embracing descendants generally, nevertheless imports a distribution *per stirpes* unless a contrary intention is found within the testamentary language. Such holding appears to me to be consistent with the natural and probable intent of a testator who uses the expression. It is supported by very respectable and certainly more modern authority than is the

opposing view; and, unlike the latter, is not required, in a sense, to apologize for its existence.

This opinion, so far as this branch of it is concerned, could be concluded at this point.

But there is another view of the matter which, if the foregoing is not sufficient, is conclusive in my judgment upon the proposition that the "issue" are to share in both income and principal upon a *per stirpes* basis. I now proceed to a brief statement of that view.

In so little favor is the rule regarded, viz., the rule that the distribution among issue in such cases as this should be upon a *per capita* basis, that those jurisdictions which adhere to it lay hold of the slightest circumstance of expression as justification for departing from it. " 'Issue' is a word which lends itself very easily to the expression of representation." Judge Cardozo so observed in *Re Farmers' Loan & Trust Co.*, 213 *N. Y.* 168, 107 *N. E.* 340, 343, 2 *A. L. R.* 910, citing *Ross v. Ross*, 20 *Beav.* 645, 52 *Eng. Reprint* 753; *Robinson v. Sykes*, 23 *Beav.* 40, 53 *Eng. Reprint* 16; *Re Orton, L. R.* 3 *Eq.* 375. A faint glimpse, as it has been called, of a contrary intent is enough to warrant the courts that adhere to the *per capita* principle of distribution among issue, to depart from it.

Now, even granting that the *per capita* principle arises *prima facie* as the correct one, from the use of the word "issue" in this will (a concession which I am of the opinion would be an erroneous one)—yet, even so there is to be found in the instrument under review something which is stronger than a faint glimpse of an intent on the testator's part that the stirpital principle was the one he contemplated. For it is to be observed that when he treated his children and his sisters as equals in the primary division of the residuary estate, he regarded the issue of a deceased sister as representative of her, and provided that they as her substitutes should share only stirpitally with the other primary beneficiaries. Here was a clear and positive revelation by the testator of an intent to dispose of his

residue in accordance with the principle of stocks. The word "issue" therefore when used in this will finds itself with a stirpital background placed there by the testator himself. If the testator desired the issue of his deceased sisters to be treated, as against the others, in a *per stirpes* sense, the faint glimpse doctrine would suggest that he wished them treated among themselves in the same sense.

Second. This branch of the case is concerned with the disposition of interest on certain coupon bonds. The testator's sister, Mrs. Buckingham, was to receive one-fifth of the income for life. She died without issue on a date between the interest periods. It is contended by her administratrix, that the interest should be apportioned in the case of each coupon as of the day of her death, that part which accrued up to her death being paid to her administratrix and that part which accrued after the day of her death to the other life beneficiaries.

My conclusion is that the apportionment should be made as claimed by the administratrix of Mrs. Buckingham. As to interest generally the rule is that it accrues from day to day and hence is apportionable. *Dexter v. Phillips*, 121 *Mass.* 178, 23 *Am. Rep.* 261; *Bridgeport Trust Co. v. Marsh*, 87 *Conn.* 384, 87 *A.* 865; *Equitable Trust Co. v. Miller*, 197 *App. Div.* 391, 189 *N. Y. S.* 293. The bonds in this case are what are familiarly known as railroad and utility bonds, with the customary bearer coupons attached evidencing the obligation of the obligor to pay interest for the six months' period preceding the respective coupons' maturity dates.

In Massachusetts the rule appears to prevail that interest evidenced by coupons attached to government, state and railroad bonds, unlike interest ordinarily, does not accrue from day to day and is therefore not subject to apportionment. *Dexter v. Phillips, supra.* To the same effect is *Union Safe Deposit & Trust Co. v. Dudley*, 104 *Me.* 297, 72 *A.* 166. These authorities treat the coupon as a separate negotiable obligation and therefore take them

out of the operation of the rule applicable to interest generally.

But why the fact that a coupon is used to evidence the interest obligation and the fact that the coupon is made negotiable should be thought to destroy the essential nature of the interest as a thing accruing from day to day, I am unable to see. The weight of authority is opposed to the Massachusetts and Maine rule. *Bridgeport Trust Co. v. Marsh*, 67 *Conn.* 384, 87 *A.* 865; *Wilson's Appeal*, 108 *Pa.* 344, 56 *Am. Rep.* 214; *United States Trust Co. v. Tobias*, 21 *Abb. N. C.* 392, 4 *N. Y. S.* 211. Mechem in *Volume* 2 of his work on *Corporations,* at § 1766, gives very succinctly and very admirably a correct summary of the state of the authorities on the question.

Let a decree be entered in accordance with the foregoing.

NOTE.—On appeal to the Supreme Court the decree entered in this cause was affirmed. See *post p.* 454.