GUY B. DOLBEARE *v.* GUY B. DOLBEARE, EXECUTOR, ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued April 6th—decided May 5th, 1938.

*Don Cambria,* for the appellants (defendants Virginia Frances et al.).

*Charles W. Atwater,* for the appellants (defendants Louis and Mary Dolbeare).

*Hibberd R. Norman* and *Richard L. Norman,* for the appellee (plaintiff).

MALTBIE, C. J. This case came to the Superior Court as an appeal from an order of distribution made in the settlement of the estate of Wilbur F. Burrows by the Court of Probate for the district of Middletown. In the Superior Court the appellant, Guy B. Dolbeare, filed reasons of appeal, to which were annexed a copy of the will of the testator, and which contained various allegations as to the parties involved and their relationship to the testator's sister, through whom they claimed to share in the estate. The appellees in the Superior Court filed an answer which either stated lack of knowledge of or denied all the material allegations of the reasons of appeal. The trial court heard the case, filed a memorandum of decision and caused judgment to enter finding the issues for the appellant. No find-

ing was made. We are therefore limited in our inquiry to such material facts as appear upon the record to have been put in issue by the reasons of appeal. Practice Book, § 189; *Williamson's Appeal*, 123 Conn. 424, 426, 196 Atl. 770. In this case, defective as is the procedure adopted, sufficient facts for determination of the appeal can be extracted from the record.

In his will the testator, after providing several legacies, gave the residue of his estate to his wife for the term of her life; he made certain gifts to be paid out of the residue at her death; and the dispositive portion of the will then concluded: "The balance of the said residuum, I give, devise and bequeath to my brother William H. Burrows and my sister, Mary G. Dolbeare, in equal shares if they survive my said wife; and in the event that only one of these survive her, then that survivor shall take the whole; and in the event that neither be living at the death of my said wife, then the issue, then living, of my said sister, shall take the share to which their mother would have been entitled had she been living."

The testator's wife has now deceased. Neither Mary G. Dolbeare nor William H. Burrows survived her, and the substitutionary gift to the "issue" of Mary becomes effective. When the testator's wife died, one son of Mary, Guy B. Dolbeare, was alive and had a living son; two other sons had then deceased, but there were living children of each. The Court of Probate decreed that the balance of the residue should be distributed to Mary's son, Guy B. Dolbeare, and to the children of her deceased sons. Guy B. Dolbeare appealed to the Superior Court and that court, sustaining the appeal, found that the whole balance should be distributed to him. The ultimate issue in the case is whether by the provision in the will that, should Mary and her brother predecease the testator's wife, her "issue" then

living "shall take the share to which their mother would have been entitled had she been living," the testator intended to make the gift only to the children of Mary, or intended to include the issue of any child of Mary who had deceased.

The word "issue" when used as a word of purchase and unaffected by any circumstances showing a different intent means descendants of every degree. *Bartlett* v. *Sears,* 81 Conn. 34, 39, 70 Atl. 33; *Stamford Trust Co.* v. *Lockwood,* 98 Conn. 337, 344, 119 Atl. 218; *Mooney* v. *Tolles,* 111 Conn. 1, 6, 149 Atl. 515. The trial court based its judgment, as appears from the memorandum of decision, largely upon a rule of interpretation referred to in *Wallace* v. *Wallace,* 103 Conn. 122, 123, 130 Atl. 116, to the effect that the word "issue" when used in correlation with the word "parent" or the like will be taken to mean children. That rule had its origin in two English cases, *Sibley* v. *Perry,* 7 Ves. Jr. 522, 32 English Reprint 211, and *Pruen* v. *Osborne,* 11 Sim. 132, 59 English Reprint 824. It has been followed to a considerable extent in this country. Note, 2 A. L. R. 942. It has, however, been strongly criticized both here and in England and in some cases where it has been followed courts have done so reluctantly, merely upon the basis of precedent. See cases referred to, 2 A. L. R. 946; 5 A. L. R. 195. As a definite rule of construction it now has arrayed against it such outstanding jurists as Justices Holmes and Cardozo; *Dexter* v. *Inches,* 147 Mass. 324, 325, 17 N. E. 551; *Matter of Farmers' Loan & Trust Co.,* 213 N. Y. 168, 172, 107 N. E. 340; although in Massachusetts it had support in an earlier decision by Gray, C. J. *King* v. *Savage,* 121 Mass. 303, 306. It is not too much to say that there is a growing tendency to regard the fact that the word "issue" if used in correlation with the word "parent" and the

like as merely a circumstance to be considered, and not to apply a definite rule of interpretation which in such a case would give it the meaning of children. *Union Safe Deposit & Trust Co.* v. *Dudley,* 104 Me. 297, 307, 72 Atl. 166; *In re Frist's Estate,* 18 Del. Ch. 409, 161 Atl. 918.

In our State the case of *Austin* v. *Bristol,* 40 Conn. 120, is sometimes referred to as adopting the rule of the English cases, but there was in that case no occasion to apply it. In *Mitchell* v. *Mitchell,* 73 Conn. 303, 308, 47 Atl. 325, we had before us a testamentary provision for a gift to a certain person and his children but if one or more of the children had died "leaving issue of his or her body, such issue shall receive the same portion that his or her parent would be entitled to if living"; we construed the word issue as meaning children, merely stating, "It includes only such issue as can take from a parent, i. e. children"; but no authority is cited and no definite rule of interpretation adopted. In *Wallace* v. *Wallace,* supra, we said (p. 133): "Where the term issue is used in correlation with parent, we have held in construing other wills that children were meant by issue, and such has been the general holding elsewhere," referring to *Mitchell* v. *Mitchell,* supra; but in the *Wallace* case there were other circumstances leading to the conclusion that by the word issue children were intended, among them being the important consideration that to construe the word in its primary significance would have made the gift void under the existing Statute of Perpetuities.

If we consider the question apart from authority, there are strong reasons against the adoption of the rule of interpretation referred to in the *Wallace* case. In the common parlance of today, issue is not ordinarily used when children are intended; indeed, its use with that meaning would sound to us strange and

stilted. In the case before us it appears from the reasons of appeal that at the time the will was executed the youngest of Mary's three children was about thirty-three years of age; it must have been to them that the testator's thoughts were directed rather than to children of Mary as an indefinite class; and that he would use the word "issue" in referring to the three children would be most unlikely. Whatever meaning we give to the provision we must depart from the primary meaning of one of the words, "issue" or "mother," and to give to the latter the significance of ancestor would take us little if any farther afield than to give to the former the meaning of children. *Jackson* v. *Jackson,* 153 Mass. 374, 376, 26 N. E. 1112. The thought of the testator was undoubtedly directed primarily to the persons who were to be the recipients of his bounty and the reference to the share of the mother is merely descriptive of the gift intended; and to change the ordinary meaning of the word issue to that of children would be to give controlling weight to the secondary and not the primary intent of the testator. *Bill* v. *Payne,* 62 Conn. 140, 141, 25 Atl. 354. The use of the word mother in describing the share of the estate intended denotes a lack of precision easily fallen into and readily understandable; the word is so much more usual than the more precise term ancestor and to adopt it avoids a considerably more elaborate form of expression which otherwise might be necessary. It is not without interest that in *Will of Dalrymple,* 173 Wis. 464, 471, 181 N. W. 821, the opinion of the court uses the word "parent" to indicate a share in the estate to which "lineal descendants" were held entitled. Our conclusion is that there is no rule of interpretation which requires that the meaning of the word "issue" in the provision before us should be restricted

to children merely because of the reference to the share of the "mother."

There are no other provisions in the will which serve to indicate the testator's intent in the provision in question. However, there is one circumstance which is necessarily involved in the situation before us, and is of weight, that is the great improbability that the testator intended to make such a preference as would result if the entire balance of the residue should go to Guy B. Dolbeare, to the complete exclusion of the representatives of the two children of Mary who had deceased. There is nothing in the will or in such circumstances as are before us to indicate any such intention on his part. Of such a situation, in the opinion written by Cardozo, J., in *Matter of Farmers' Loan & Trust Co.*, 213 N. Y. 168, 173, 107 N. E. 340, it is said: "To say that by the gift to issue he meant children but not grandchildren, is to impute to him a purpose to disinherit one branch of descent to the enrichment of another. There is nothing in this will to justify us in deviating from the settled rule that a construction leading to such consequences ought generally to be avoided." One of the principles in the interpretation of wills which has been frequently applied and has stood the test of time, bottomed as it is upon basic elements in human relationship is that, where nothing indicates the contrary, it is to be presumed that a testator does not intend to disinherit the natural objects of his bounty. *Cumming* v. *Pendleton*, 112 Conn. 569, 574, 152 Atl. 175. This presumption is the ground upon which rest the rules of interpretation that "heirs are not to be cut off by doubtful implication;" *Connecticut Trust & Safe Deposit Co.* v. *Chase*, 75 Conn. 683, 691, 55 Atl. 171; and that a distribution of an estate in accordance with the Statute of Distribution is preferred. *West Haven Bank & Trust Co.* v. *McCoy*,

117 Conn. 489, 491, 169 Atl. 49; *Raymond* v. *Hillhouse,* 45 Conn. 467, 474. As between an indication from the use of the word "mother" in the provision in question that by issue the testator meant children, and the improbability of an intent on his part that, if any of Mary's children died, their children should be excluded from the inheritance, the latter is much the more weighty consideration. We therefore conclude that the balance of the residue should be distributed as the Court of Probate ordered, among Guy B. Dolbeare and the children of the sons of Mary who died before the life tenant.

There is error, the judgment is set aside and the case remanded with direction to dismiss the appeal.

In this opinion the other judges concurred.